# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

JANETTE JONES,           }
                        }
       **Plaintiff,**       }
                        }
**v.**                  }       **Case No. 5:09-CV-0955-RDP**
                        }
**MICHAEL J. ASTRUE, Commissioner**  }
 **of Social Security,**        }
                        }
       **Defendant.**      }

## MEMORANDUM OF DECISION

Plaintiff Janette Jones brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB")  and Supplemental Security Income ("SSI") benefits.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).   For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Procedural History

Plaintiff filed her application for a period of disability and DIB under Title II of the Act and for SSI benefits under Title XVI of the Act on August 18, 2005, alleging a disability onset date of June 6, 2005.[1]  (Tr. 67-71).   Plaintiff's initial application was denied.  (Tr. 53-57).   Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").  (Tr. 16, 60-65).  A hearing was held before ALJ Dan Grady on June 13, 2007.  (Tr. 425-41).  In his July 23, 2007

---

[1]Plaintiff amended her disability onset date to June 6, 2005 following a prior unfavorable Administrative Law Judge decision.  (Tr. 429).

decision, the ALJ determined Plaintiff suffers from a severe combination of impairments, including a history of injuries to the right index finger and long finger, right carpal tunnel syndrome with a history of a failed release, an anxiety/panic disorder with agoraphobia, and a depressive disorder. (Tr. 22-23). The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the Act. (Tr. 22-23). The ALJ further determined that Plaintiff retained the residual functional capacity ("RFC") to perform at least sedentary work with no overhead reaching and no pushing or pulling with her right upper extremity, and could not use ladders, drive or operate moving machinery. (Tr. 23-24). The ALJ also determined Plaintiff would have no more than moderate limitations in her ability to perform the basic mental demands of work-related activities and would be limited to simple tasks and instructions with casual contact with her co-workers and the public. (Tr. 23). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. (Tr. 5). Plaintiff filed this civil action seeking review.

Plaintiff was born January 10, 1963 and has a high school education. (Tr. 67, 429). At the time of filing, Plaintiff was not married and had one child, Frederick O. Jones, living with her. (Tr. 67-69). Plaintiff's previous work experience includes a position as a hemmer for a sewing manufacturer from 1989 through 2001, and as a hand packager from August 2002 through July 2003. (Tr. 428). Plaintiff stopped working July 20, 2003. (Tr. 77). Plaintiff claims she became unable to work due to a disabling condition on June 6, 2005 and has not performed substantial gainful activity since that date. (Tr. 67, 69). The ALJ found Plaintiff to have the following severe impairments: injury to the hand and the carpal, failed carpal tunnel release, anxiety and depression. (Tr. 22). In

2

addition to these impairments, the ALJ further determined Plaintiff suffers from degenerative disc disease of the cervical spine, insomnia, maliaise, fatigue, vertigo and hypertension to be non-severe. (Tr. 23).

Plaintiff's injury stems from an accident which occurred on April 21, 2003, in which her fingers were crushed in a shrink wrap machine. (Tr. 430-31). Plaintiff testified she must lie down five to six times each day and has difficulty completing daily tasks such as making the bed, washing dishes, cooking, shopping, and vacuuming. (Tr. 431-36). Plaintiff claims to have difficulty sleeping, as well as anxiety due to her injury. (Tr. 434). Plaintiff assists her child in getting ready for school daily and loads the dishwasher. (Tr. 107, 433). Plaintiff further testified that she can lift a few pounds, such as a book, and can move all of her fingers. (Tr. 410-11).

Following Plaintiff's hand injury, Plaintiff was treated by Dr. Fisher from April 2003 through July 2003. (Tr. 143-53). Dr. Fisher's records reflect Plaintiff's consistent complaints of pain and numbness in her hand. (Tr. 157). On July 9, 2003, Dr. Fisher released Plaintiff to return to work on July 14, 2003 without restriction, and indicated that, at that time, Plaintiff was completing tasks necessary for work. (Tr. 145).

Plaintiff was treated by Dr. Reddy for neck, arm and hand pain, and right carpel tunnel syndrome from July 2003 through November 2005. (Tr. 164-94, 236-50, 265-67).[2] Dr. Reddy's records indicate loss of strength and grip in Plaintiff's right hand, as well as anxiety, depression, stress, and sleeping problems. (Tr. 266). Dr. Reddy's records from 2005 show notations of neck pain, as well as pain in Plaintiff's right hand. (Tr. 164, 175). According to his records, muscle

---

[2] Because of a number of unsigned or unclearly signed medical records from Exhibit B-4F, the record is unclear whether the treating physician was Dr. Reddy or Dr. Syed.

relaxers properly controlled Plaintiff's pain.  (Tr. 175).  Dr. Reddy did not recommend treatment.  (Tr. 164, 175).  Dr. Reddy's records show no indication of severe pain nor any indications that Plaintiff's pain had resulted in limitations which significantly impaired Plaintiff's functioning. (Tr. 164-94, 236-50, 265-67).

In February 2004, Dr. Fraser treated Plaintiff and administered cervical x-rays which showed no instability.  (Tr. 160).  Plaintiff's neurological exams remained normal.  (Tr. 160).  Dr. Fraser's records indicate numbness occurring with use of Plaintiff's right hand, which Dr. Fraser attributed to Plaintiff's carpel tunnel syndrome.  (Tr. 161).  His records show that Plaintiff complained of neck pain radiating to her shoulders.  (Tr. 161).  At this time, Plaintiff was taking medications including Vioxx, Skelaxin, Ultram, and Celebrex, and had received injections in her neck.  (Tr. 161).  Dr. Fraser recommend physical therapy but not surgery.  (Tr. 160, 162).

On August 4, 2004, Dr. O'Brien performed an unsuccessful carpal tunnel release surgery on Plaintiff's right hand.  (Tr. 346).  Dr. O'Brien found Plaintiff's impairment to her hand to be 20%, which is an 18% impairment to the upper extremity, and an 11% impairment to the whole person. (Tr. 345).  Dr. O'Brien indicated Plaintiff's permanent work restrictions would be no repetitive use of the right hand.  (Tr. 345).

On December 16, 2005, Dr. Haney, a licensed psychologist, examined Plaintiff at the request of the Disability Determination Services ("DDS").  (Tr. 272).  Dr. Haney diagnosed Plaintiff with major depression, moderate to severe, with suicidal ideation and panic disorder without agoraphobia. (Tr. 273).  Dr. Haney's records show Plaintiff was taking the following medications: Paxil, Klonopin, Kozar, Flexeril, and Lortab.  (Tr. 272).  At the time of Dr. Haney's examination, Plaintiff was oriented as to time, place, person, and situation.  (Tr. 272).  Plaintiff's recent and remote

4

memory appeared intact, although Plaintiff did complain of some memory difficulties. (Tr. 272). Dr. Haney indicated Plaintiff appeared depressed but that her conversation skills appeared logical and goal directed. (Tr. 272). Dr. Haney recommend Plaintiff seek further treatment, but opined that her ability to function, in most jobs, appeared only moderately impaired by her physical and emotional limitations. (Tr. 273).

Dr. Gill performed a second DDS consultative evaluation of Plaintiff on December 21, 2005. (Tr. 274). According to Dr. Gill, Plaintiff could close her hand into a full fist and could oppose her thumb and all fingertips. (Tr. 275). Plaintiff's grip strength was 3-4/5 in her right hand. (Tr. 275). Her muscle strength was 4/5 and her right hand looked normal. (Tr. 275). Dr. Gill found no tenderness and no joint deformity. (Tr. 275). Her left arm was normal and fully functioning with grip strength of 5/5. (Tr. 275). Dr. Gill indicated Plaintiff's neck appeared normal, although she complained of pain with movement. (Tr. 275). Plaintiff had a normal gait and walked unassisted across the room on her toes and heels. (Tr. 275). Plaintiff had the ability to lift her shoulder to about 110 degrees. (Tr. 275). Plaintiff's elbow moved normally and her arm was neurovascularily intact. (Tr. 275). Her joints moved with a good range of motion. (Tr. 275). Dr. Gill diagnosed Plaintiff with right upper extremity pain, history of right hand injury, and right carpel tunnel syndrome. (Tr. 276). With the exception of her right upper extremity, Dr. Gill's examination of Plaintiff showed no significant limitations in her functioning. (Tr. 275-76).

On December 23, 2005, Dr. Stephenson, a non-examining orthopedic surgeon, completed a Physical Residual Functional Capacity Assessment of Plaintiff. (Tr. 277). Dr. Stephenson opined Plaintiff could occasionally lift twenty pounds, could frequently lift and or carry ten pounds, could sit, walk or stand a total of six hours in an eight hour work day, and had no limitations on her ability

to push or pull. (Tr. 278). Dr. Stephenson indicated Plaintiff could fill out the ADLS form, although writing caused some pain and difficulty. (Tr. 282). According to Dr. Stephenson, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl and was unlimited in feeling and reaching in all directions. (Tr. 278). The only postural limitations Dr. Stephenson noted barred Plaintiff from climbing ladders, ropes, or scaffolds. (Tr. 279). Dr. Stephenson found Plaintiff to be limited in her capability for handling and fingering, specific to her right hand. (Tr. 281). Additionally, Plaintiff was limited in her exposure to hazards, such as machines or heights. (Tr. 281). Other than these limitations, Dr. Stephenson found no visual, communicative, or environmental limitations. (Tr. 280). Dr. Stephenson supported his conclusions with the records and findings of Drs. Gill, Reddy, and Syed, and Plaintiff's neck CT. (Tr. 279). Dr. Stephenson found Plaintiff's statements only partially credible and found no listing of a level of impairment which would preclude her from all work, although he did recognize Plaintiff would have some limitations. (Tr. 282).

On December 27, 2005, Dr. Nuckols, a psychiatrist, completed a psychiatric review of Plaintiff, diagnosing her with major depression, moderate to severe, SI per psych CE, and panic disorder without agoraphobia. (Tr. 285, 288-90). Plaintiff never received mental health counseling nor received psychiatric hospitalization, according to Dr. Nuckols. (Tr. 296). Dr. Nuckols' records indicate Plaintiff appeared depressed, but her remote and recent memory appeared intact, and her conversation was logical and goal directed. (Tr. 296). Dr. Nuckols found Plaintiff retained the ability to understand, remember, and carry out simple tasks, as well as concentrate for two hour periods to assemble an eight hour work day. (Tr. 300). Dr. Nuckols opined Plaintiff's restrictions on daily life were due mostly to her physical complaints and found Plaintiff to have only moderate limitations and to be only moderately impaired. (Tr. 294-98).

6

Dr. Syed treated Plaintiff from July 2003 through November 2005, and resumed treatment from March 2006 through May 2007.  Dr. Syed's records indicate Plaintiff had neck and hand pain, cevicalgia, pain in her shoulder joint, carpal tunnel syndrome, benign essential hypertension, headache, fibrocystic breast disease, anxiety, depression, dysthymic disorder, and insomnia.  (Tr. 348).  Dr. Syed's records show that Plaintiff reported a consistent level of pain throughout 2005 and from March 2006 through May 2007.  (Tr. 327-32, 348).  An MRI conducted at the request of Dr. Syed on November 24, 2003 showed Plaintiff suffers from a diffuse disc bulge primarily at C5-6, and perhaps very minimally at C6-7.  (Tr. 251).  A Nerve Conduction Velocity Report conducted by Dr. Reddy on December 2, 2003, confirmed that Plaintiff had right carpel tunnel syndrome.  (Tr. 161).

On November 22, 2004, Dr. Syed noted Plaintiff was very depressed.  (Tr. 227).  An additional MRI conducted on December 2, 2004 showed Plaintiff's cervical spine was essentially normal.  (Tr. 228).  On March 26, 2004, despite claiming to be severely depressed and unable to take care of her children, Plaintiff refused admittance to a psychiatric hospital.  (Tr. 241).

In March 2006, Plaintiff complained of a palable breast mass which remained unchanged throughout Dr. Syed's treatment of Plaintiff.  (Tr. 373).  At the same visit, Plaintiff reported increased anxiety and depression, but she reported she was not taking her medication at the time.  (Tr. 373-75).  On May 4, 2006, Plaintiff reported she was still depressed but it was noted she was still not taking depression medication.  (Tr. 370).  Dr. Syed's records from June 2006 indicate Plaintiff continued to suffer from pain and depression, but he did not recommend treatment.  (Tr. 367-69).  In July 2006, Dr. Syed wrote a letter on Plaintiff's behalf requesting assistance with her utility bill.  (Tr. 366).  In April 2007, Dr. Syed indicated Plaintiff's condition had not changed,

continuing to report neck pain extending to her hands, but his assessment again indicated no treatment plan. (Tr. 358-59). An examination of Plaintiff's right upper extremity showed soft tissue tenderness, joint tenderness of the right shoulder, and pain in the arm and hand. (Tr. 358-59). In May 2007, Plaintiff continued to describe symptoms of anxiety and depression. (Tr. 352).

As of April 16, 2007, Plaintiff was taking the following medications: Cozaar; Tramadol; Clonazepam; Flexert; Hydrocodene; Celebrex; Hydrocodone; and Virlex. (Tr. 135). During the ALJ hearing, Plaintiff testified to having received Dydrocodone shots and taking Clorazepam, an anti anxiety medication, and Flexeril, a muscle relaxer, as well as Tramadol. (Tr. 434-36).

On May 21, 2007, Dr. Syed completed a Clinical Assessment of Pain in which he indicated Plaintiff's pain was present to such an extent as to be distracting to her adequate performance of daily activities or work. (Tr. 350). Dr. Syed also indicated that physical activity, such as walking, standing, bending, stooping, and moving of extremities would result in greatly increased pain to the point to cause distraction from tasks. (Tr. 350). Dr. Syed's assessment applied to Plaintiff's right hand only. (Tr. 350). Dr. Syed additionally indicated Plaintiff did have an underlying medical condition consistent with the pain she experiences. (Tr. 351).

Dr. Syed also completed a Physical Capacities Evaluation in which he opined Plaintiff could be expected to carry ten pounds occasionally or less frequently. (Tr. 349). Dr. Syed opined that Plaintiff would be able to sit, stand and walk for eight hours in an eight hour day. (Tr. 349). Further, he found Plaintiff could occasionally perform pushing and pulling moments, perform gross manipulation, and stooping. (Tr. 349). Dr. Syed limited Plaintiff from operating motor vehicles. (Tr. 349).

II.    **ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*   First, the Commissioner determines whether the claimant is working.   Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.   Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.   Fourth, the Commissioner determines whether the claimant's Residual Functional Capacity ("RFC") can meet the physical and mental demands of past work.   The claimant's RFC is what the claimant can do despite her impairment.   Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevents the performance of any other work.   In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.   If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability of June 6, 2005.   (Tr. 22, Finding No. 2).   Based on the medical evidence presented,

9

the ALJ concluded Plaintiff does have a severe combination of impairments including: a history of injuries to her right index finger and long finger, right carpal tunnel syndrome with a history of a failed release, an anxiety/panic disorder with agoraphobia,[3] and a depressive disorder.  (Tr. 22, Finding No. 3).  However, the ALJ found this combination of impairments did not meet or equal one of the listed impairments in the Act.  (Tr. 23, Finding No. 4).  The ALJ found that the combination of impairments did not constitute a marked limitation which more than moderately limited Plaintiff's activities.  (Tr. 23).  The ALJ determined Plaintiff retains the RFC to perform at least sedentary work with no overhead reaching and no pushing or pulling with her right upper extremity.  (Tr. 23, Finding No. 5).  The ALJ also found Plaintiff cannot climb ladders and would be unable to drive or operate machinery.  (Tr. 23, Finding No. 5).  Also, the ALJ concluded that Plaintiff would have no more than moderate limitations in her ability to perform the basic mental demands of work related activities and would be limited to simple tasks and instructions with casual contact with her co-workers and the public.  (Tr. 23, Finding No. 5).  The ALJ determined Plaintiff would be unable to perform any past relevant work.  (Tr. 28, Finding No. 6).

A Vocational Expert ("VE") testified that given Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, Plaintiff would be able to perform the requirements of representative occupations such as an inspector, a sorter, and an assembler, all representing a significant sum of jobs in both the state and national economy.  (Tr. 438-39).  The VE further testified, if Plaintiff was limited to occasional gross manipulations, she

---

[3] The ALJ's finding that Plaintiff has panic disorder *with agoraphobia* contradicts the finding of Drs. Nuckols and Haney that Plaintiff suffers from panic disorder *without agoraphobia*. This does not suggest error, however, because, to the extent the ALJ was mistaken, his mistake weighs in favor of Plaintiff.

could perform work such as a surveillance monitor or as a clerk, also representing significant numbers of jobs in both the state and national economy.  (Tr. 439-40).  The ALJ considered Plaintiff's age, education, work experience, RFC, and the VE's testimony in making the determination that jobs exist in significant sums in the national economy that Plaintiff can perform.  (Tr. 28, Finding 10).  The ALJ found Plaintiff has not been under a disability as defined in the Act from June 6, 2005 to the date of his decision.  (Tr. 29, Finding No. 11).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner, reversed and remanded for further consideration.  Plaintiff asserts that the ALJ's findings regarding pain are inconsistent with both her testimony and the medical evidence of record from Dr. Syed and other treating sources.  (Pl. Br. at 2, 8).  Specifically, Plaintiff submits that Dr. Syed's records clearly support a debilitating level of pain.  (Pl. Br. at 9).  Plaintiff focuses on Dr. Syed's opinion that her pain would be distracting to adequate performance of daily activities.  (Pl. Br. at 7-10).  Plaintiff additionally contends the ALJ failed to consider the Eleventh Circuit Pain standard, as it applied to the facts of the case, and thus did not apply the proper legal standards.  (Pl. Br. at 9).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (internal citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds the ALJ relied on substantial evidence and applied the proper legal standards.

### A.   The ALJ Properly Considered the Treating Physician's Pain Assessment.

Plaintiff asserts the ALJ did not accord proper weight to Dr. Syed's opinion. Specifically, Plaintiff contends that the ALJ improperly disregarded Dr. Syed's Clinical Assessment of Pain. Additionally, Plaintiff contends her other treating sources' opinions do not support the ALJ's findings. For the reasons explained below, those arguments miss the mark.

12

The Commissioner's factual findings will be upheld if supported by substantial evidence, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002), and here the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.  The ALJ properly relied on Dr. Syed's Physical Capacities Evaluation and properly rejected Dr. Syed's Clinical Assessment of Pain as being inconsistent with the actual treatment recommended and the other treating physicians' opinions.  The ALJ properly found there were no objective findings to support a level of pain which would result in significant limitations, concluding Plaintiff's injuries may create some limitations, but Plaintiff retained the capability to work. (Tr. 27).

Although the opinion of the examining physician should be accorded substantial weight, it is not necessarily dispositive.  *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987).  If the ALJ does not give the treating physician's opinion controlling weight, it must clearly articulate the reasons for not doing so.  *East v. Barnhart*, 197 Fed. Appx. 899 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (4th Cir. 1997)).  However, nothing requires the ALJ to give the opinion of the examining physician controlling weight when that opinion is inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d),  404.1527(f)(2), 416.927(d), 416.927(f)(2).    In this case, Plaintiff did not report significant pain and there are no objective findings to support a level of pain which would result in significant limitations.  (Tr. 27).  Based on the actual treatment provided by Dr. Syed, her recommendations regarding Plaintiff's capabilities on the Physical Capacities Evaluation, and the other treating physicians' opinions, the ALJ properly rejected Dr. Syed's opinion that Plaintiff's pain would be distracting to adequate performance of daily activities at work. (Tr. 27).  *See Johns*, 821 F.2d at 555 (rejecting treating physician's opinion because it was conclusory and unsupported by objective medical evidence).

The ALJ properly gave weight to some of Dr. Syed's opinions, while rejecting the parts which were inconsistent with the record and other objective medical evidence. For example, the ALJ gave considerable weight to the opinion of Dr. Syed that Plaintiff could sit, stand and walk for eight hours a day. (Tr. 26). Plaintiff is correct in her assertion that Dr. Syed's treatment records do indicate a consistent level of pain. (Tr. 232-59, 332, 358, 368, 371-74). But Dr. Syed's records do not support a severity of problems or reflect that Plaintiff suffered severe to disabling pain which results in significant limitations to her ability to work.[4] (Tr. 306-43, 348-77).

Additionally, Dr. Syed's records show Plaintiff frequently did not comply with her prescribed medications for pain, anxiety, and depression. (Tr. 358, 370, 373). Further, Dr. Syed's Physical Capacities Evaluation does not comport with his opinion that Plaintiff would not be able to work due to the severity of her pain. (Tr. 349). In the Physical Capacities Evaluation, Dr. Syed opined Plaintiff could sit, stand or walk for eight hours in an eight hour work day and could lift ten pounds occasionally. (Tr. 349). Therefore, the court finds the ALJ gave considerable weight to Dr. Syed's opinion regarding Plaintiff's working capabilities in the Physical Capacities Evaluation. (Tr. 26).

The Physical Capacities Evaluations from Dr. Stephenson and the records from Plaintiff's treating physicians, Drs. Syed, O'Brien, Gill, Fraser, and Reddy, all support the ALJ's conclusion that the combined effects of Plaintiff's impairments would reduce her ability to engage in some work related activities, but that she could nevertheless perform a sedentary level of work with some limitations. (Tr. 23). *See generally* 20 C.F.R. § 404.1527(d)(3).

---

[4]To be sure, Dr. Syed's records indicate degenerative disc disease of Plaintiff's cervical spine, insomnia, malaise, fatigue, vertigo and hypertension. (Tr. 374), but Plaintiff conceded to the ALJ that these impairments were not severe. (Tr. 431-32). Plaintiff's medical records support her concession. A CT Soft Tissue Neck exam, Bilateral Carotid Duplex Doppler, and an MRI of Plaintiff's cervical spine were all negative. (Tr. 183, 228, 251).

Following Plaintiff's hand-crushing accident, Dr. Fisher released Plaintiff to work without restriction on July 14, 2003.  (Tr. 145).  In December 2005, Dr. Gill performed a Consultative Disability Examination and found Plaintiff could make a fist with her right hand, had a stronger grip than she contended at the ALJ trial, had a muscle strength of 4/5, could move her arm and could oppose her thumb and all finger tips.  (Tr. 274-65).  Dr. Gill opined Plaintiff's only limitation was to her right upper extremity.  (Tr. 274-76).  Dr. Haney performed a Consultative Disability Determination and opined that Plaintiff's ability to function in most jobs was only moderately impaired, thereby supporting the ALJ's finding.  (Tr. 271-73).  In September, October, and November 2005, Dr. Reddy indicated that Plaintiff's pain in her neck and arm could be managed with Mobic, a medication used to treat pain and inflamation, and muscle relaxers.  (Tr. 164, 175).  Dr. Reddy's treatment records indicate Plaintiff suffered from consistent neck pain, but do not indicate severe pain which would impair her ability to function completely.  (Tr. 164, 167, 169, 175, 177, 192, 232, 265-67).[5]

The ALJ properly relied on and gave substantial weight to specialists' opinions regarding Plaintiff's abilities.  *See* 20 C.F.R. § 404.1527(d)(5). Drs. Stephenson and O'Brien are both orthopedists and specialists.  (Tr. 277, 345).  Dr. Stephenson, a non-examining orthopedic surgeon, conducted an RFC assessment of Plaintiff which supports the ALJ's findings that Plaintiff has the capability to work.  (Tr. 277).  Dr. Stephenson found there was no level of impairment which would preclude Plaintiff from all work, although he did indicate she would have some limitations.  (Tr.

---

[5] Some of the records are unclear as to the identity of the treating physician.  The records are filed under Exhibit B-4 F described as Medical Records covering the period from 7/18/03 to 1/21/05 from S.R. Reddy, MD but it appears some of the records are not Dr. Syed's or were signed by other physicians.

15

282). Dr. O'Brien, an orthopedist, indicated the impairment to Plaintiff's hand is 20% which is an 18% impairment to her upper extremity and an 11% impairment to the whole person. (Tr. 345-46). Dr. O'Brien opined in November 2004 that Plaintiff could work with a restriction on repetitive use of her right hand and would achieve maximum medical improvement by December 2004. (Tr. 345). Based on these specialists' opinions, the ALJ correctly rejected Plaintiff's contention that she can not work.

As to her mental condition, Plaintiff never sought treatment from a mental health source and the state agency opined that Plaintiff would have only moderate restrictions. (Tr. 273). Dr. Syed's medical records do indicate notations of continuing depression and anxiety, but not to a level severe enough to preclude Plaintiff from all work. (Tr. 352, 367-69, 373-75 ). In 2004, Plaintiff refused to seek treatment at a psychiatric hospital despite claiming to be severely depressed. (Tr. 241). Dr. Haney's records additionally support the ALJ's conclusion, finding Plaintiff to be only moderately impaired. (Tr. 273). Dr. Nuckols opined Plaintiff's restrictions on daily life are due mostly to her physical conditions and found Plaintiff to have only moderate limitations. (Tr. 294-98). And throughout substantial portions of the relevant time frame, Plaintiff never received mental health counseling. (Tr. 296). Based upon this record evidence, the ALJ's findings that Plaintiff's anxiety/panic disorder and her depressive disorder results in no more than moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration persistence or pace (Tr. 23) are supported by substantial evidence. The ALJ also properly found these impairments, while resulting in some limitations, do not proscribe her completely from engaging in work related activity.

**B.      The ALJ's Credibility Assessment is Supported by Substantial Evidence.**

Plaintiff argues the ALJ did not accord her subjective complaints of pain sufficient weight.

Specifically, Plaintiff asserts the ALJ's decision is not supported by substantial evidence, because

the ALJ did not properly apply the Eleventh Circuit pain standard.

The Eleventh Circuit has adopted a well-settled three-part pain standard:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted).  An ALJ's

decision will be upheld if his findings and discussion indicate that the three part pain standard was

applied.  *Wilson*, 284 F.3d at 1226.

Although the ALJ did not specifically reference the Eleventh Circuit pain standard, the ALJ

applied a similar approach, applying the standard under 20 C.F.R. §§ 404.1529, 416.929 and Social

Security Ruling 96-4p and 96-7p.  (Tr. 24).  The language in § 404.1529 is substantially similar to

the language used in the three part pain standard and contains the same language in regard to

subjective pain testimony which the Eleventh Circuit initially interpreted in establishing its pain

standard.  *Wilson*, 284 F.3d at 1226.  Here, the ALJ clearly cited to 20 C.F.R. § 404.1529, as well

as SSR 96-97, thus indicating the ALJ properly applied the Eleventh Circuit pain standard. (Tr. 24).

 In citing to 20 C.F.R. § 404.1529, and based on the findings and discussion of the ALJ, it is clear

the ALJ properly applied the Eleventh Circuit's pain standard.  *See Veasey v. Astrue*, Civ.A. No.

1:06-CV-1909-AJB 2008 WL 504388 (N.D.Ga. 2008)(citing *Wilson*, 284 F.3d at 1223) (holding a reference to 20 C.F.R. § 404.1529 indicates the ALJ properly applied the three part pain standard).

   If the record shows a claimant has a medically determinable impairment that could reasonably be expected to produce pain, the ALJ must then evaluate the intensity and persistence of the pain in order to determine how the symptoms limit an individual's capacity for work. 20 C.F.R. § 404.1529(c)(1).  In order to evaluate a claimant's subjective complaint of pain, the ALJ may look to (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of the claimant's pain, (3) medication prescribed, (4) treatment  received, (5) any measures other than treatment used to relieve the claimant's symptoms, and (6) any other factors concerning the claimant's functional limitations and restrictions.  20 C.F.R. § 404.1529(c).

   The ALJ rejected Plaintiff's subjective testimony and articulated, in detail, substantial evidence supporting his decision.  (Tr. 24-28).  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 25).  The ALJ also discredited Plaintiff's subjective complaints and concluded that the objective evidence indicated that Plaintiff possesses the RFC to perform certain types of sedentary work with restrictions.  (Tr. 23).  In making his credibility determination the ALJ found that, while it was credible Plaintiff had some limitations, her contention of daily pain greater than 6/10 was inconsistent with the record.  (Tr. 27).  The ALJ's findings are supported by substantial evidence.  He properly relied on Plaintiff's history of treatment, daily activities, his visual observations at trial, actual treatment received by her from all physicians, all physicians' opinions regarding her conditions, and her noncompliance with her medication. (Tr. 24-28).  *See Petteway*

18

*v. Commissioner of Social Sec.*, 353 Fed.Appx. 287 (11th Cir. 2009) (in making credibility determinations, the ALJ properly relied on the plaintiff's testimony about his daily activities, medication, and course of treatment).

The ALJ specifically found Plaintiff's subjective complaints of pain greater than 6/10 were not corroborated by the objective medical evidence. (Tr. 14). As noted earlier, Plaintiff's treating physicians did not find her pain so debilitating as to proscribe her from working completely. Dr. Syed opined Plaintiff could sit, stand or walk for eight hours a day. (Tr. 349). Additionally, some of Plaintiff's contentions are directly contrary to the objective medical evidence. Plaintiff claims she could not make a fist, but Dr. Gill's medical records indicate, in fact, Plaintiff could do so. (Tr. 274). Contrary to Plaintiff's contentions, Dr. Syed opined Plaintiff could use her right hand occasionally (Tr. 349, 433), and Dr. O'Brien stated Plaintiff would only be restricted from repetitive use of her right hand. (Tr. 345). The ALJ properly relied on this evidence to discredit Plaintiff's complaints.

Additionally, the ALJ properly relied on the daily activities performed by Plaintiff in making his credibility assessment. (Tr. 27). *See* 20 C.F.R. §404.1529(c); *see also Graham*, 129 F.3d at 1424 (ALJ properly relied on the plaintiff's daily activities to determine what work the plaintiff could complete). In her Medical Activities of Daily Living Questionnaire, Plaintiff described that in an average day she got her son ready for school and loaded the dishwasher. (Tr. 107 ). Additionally, Plaintiff could drive up to sixteen miles (Tr. 108, 410), could write with her right hand (although with some pain (Tr. 406)), and could manage her personal hygiene. (Tr. 410-11). These activities indicate Plaintiff was capable of performing some work related activities.

The ALJ also properly relied on his subjective findings of Plaintiffs demeanor at the hearing in order to evaluate her claims. *See Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985); (Tr.

27). Although, the ALJ did note the trembling in Plaintiff's right hand at trial, he found her demeanor to show she had the capability to work. (Tr. 431).

Finally, in dismissing her subjective complaints, the ALJ properly relied on the fact that Plaintiff did not comply with her prescribed pain medication. *See Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir.1984) (holding the ALJ properly considered the plaintiff's use of painkillers); *Brown v. Astrue*, 298 F.Appx. 851, 853 (11th Cir. 2008) (ALJ properly considered the plaintiff's failure to comply with his treatment regimen); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding the ALJ could properly rely on plaintiff's refusal to take prescribed medication in order to find the plaintiff was not disabled). Plaintiff's failure to comply with her medication discredits her complaints regarding her level of pain, anxiety, and depression.

As to Plaintiff's mental capabilities, Drs. Nuckols', Haney's and Syed's records indicate Plaintiff was only slightly limited. Accordingly, the ALJ reasonably concluded Plaintiff was able to perform simple tasks and instructions with casual contact with her co-workers and the public. (Tr. 27).

The court concludes that the ALJ properly rejected Plaintiff's subjective claims. The ALJ recognized that it is completely credible for Plaintiff to claim that she has some limitations of use of her right hand, but it is not fully credible to say that she cannot use it completely, or that she is so severely limited as to only be able to use her right hand occasionally. (Tr. 27). Substantial evidence supports the ALJ's finding that, while Plaintiff does have some limitations, her condition did not prevent her from performing any work.

**VII.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____6th_____ day of July, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

21